CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 12 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PRESTON L. RHODES, | ) |
|     Plaintiff, | ) Civil Action No. 7:12CV00579 |
| v. | ) **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) By: Hon. Glen E. Conrad |
|     Defendant. | ) Chief United States District Judge |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Preston L. Rhodes, was born on January 1, 1990 and eventually completed his high school education.[1] While Mr. Rhodes has held part-time jobs, the Administrative Law Judge found that plaintiff has never engaged in substantial gainful activity. (TR 11). It seems that Mr. Rhodes received child's SSI benefits based on a diagnosis of mental retardation with a secondary

---

[1] Plaintiff testified that he received a "special ed diploma." (TR 46).

diagnosis of ADHD. His disability was said to have begun on June 2, 1998. Apparently, at that point in time, plaintiff's IQ scores were such as to establish the existence of a listed impairment under the appropriate rules set forth in Appendix 1 to Subpart P of the Administrative Regulations Part 404. However, when Mr. Rhodes reached the age of 18, his eligibility for benefits was redetermined by the Social Security Administration pursuant to the provisions of 42 U.S.C. § 1382c(a)(3)(H)(iii). It is undisputed that, by that time, new testing produced IQ scores which do not meet any of the appropriate listings under Subpart P.[2] Accordingly, the Commissioner undertook to redetermine plaintiff's eligibility for SSI benefits under the remaining adult criteria established under 20 C.F.R. § 416.920. However, plaintiff's continuing eligibility was denied at both the initial consideration and reconsideration levels. Mr. Rhodes then sought and received a *de novo* hearing and review before an Administrative Law Judge.

In an opinion dated January 25, 2012, the Administrative Law Judge also decided that Mr. Rhodes was no longer entitled to supplemental security income benefits. The Law Judge found that plaintiff's disability ended on May 1, 2009, and that he remained capable of performing substantial gainful activity through the date of the administrative decision. The Law Judge held that, as of May 1, 2009, Mr. Rhodes suffered from severe impairments, including diabetes mellitus, exacerbated by noncompliance; borderline intellectual functioning; history of attention deficit hyperactivity disorder; anxiety/depression; and history of substance abuse, in remission. The Law Judge also concluded that Mr. Rhodes does not experience an impairment, or combination of impairments, which meets any

---

[2] If a claimant suffers from a listed impairment, the claimant is deemed to be disabled for all forms of substantial gainful employment without reference to factors such as age, education, and prior work experience. See 20 C.F.R. § 416.920(d).

of the listings under Appendix 1 to Subpart P of the Administrative Regulations Part 404. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that since May 1, 2009, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) as follows: lift and carry 10 pounds occasionally and 5 pounds frequently; sit for a total of 6 hours and stand and/or walk for a total of 2 hours in an 8 hour workday with the option to occasionally arise in place to a standing position for brief periods of time and (nonexertional) no constant fingering or feeling. The claimant's moderate limitation in social functioning and concentration further limit the claimant to the performance of short, simple instructions with only occasional interaction with others.

(TR 18). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge ruled that Mr. Rhodes has possessed sufficient functional capacity to perform several specific sedentary work roles at all relevant times since May 1, 2009. Accordingly, the Law Judge ultimately concluded that plaintiff's disability ended on May 1, 2009 and that he is no longer entitled to supplemental security income benefits. See 20 C.F.R. §§ 416.987(e) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Rhodes has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's

3

education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Mr. Rhodes has a history of serious problems, including borderline intellectual functioning and severe diabetes mellitus. The court believes that the Administrative Law Judge reasonably relied on a psychological assessment by Dr. Jeffrey B. Luckett in determining that plaintiff's mental deficiencies are not so severe as to constitute or contribute to an overall disability. Dr. Luckett saw Mr. Rhodes on November 12, 2009. On that day, WAIS testing confirmed that plaintiff's IQ measurements had improved since the time of his childhood scores. Based on the psychological tests and his own clinical examination, Dr. Luckett concluded as follows:

> In summary then, Mr. Preston Leon Rhodes presented for an intellectual assessment and mental status evaluation. Evidence from Mr. Rhodes' intellectual assessment placed his Processing Speed abilities within the Low Average Range of intellectual functioning encompassing scores of 80 through 89. Mr. Rhodes' Verbal Comprehension, Perceptual Reasoning, Working Memory, and Full Scale IQ abilities placed him within the Borderline Range of intellectual abilities encompassing scores of 70 through 79. These scores are consistent with his clinical presentation. Specific strengths and weaknesses relative to this individual can be understood by comparing his percentile across different subtests.
>
> Mr. Rhodes also underwent a clinical interview and mental status examination. Evidence from all sources of assessment are illustrative with the following diagnoses:
>
> | | |
> |---|---|
> | Axis I | 309.4 Adjustment disorder with mixed disturbance of emotions and conduct - acute. |
> | | 305.00 Alcohol abuse. |
> | | 304.80 Polysubstance abuse, by history. |
> | Axis II | None |
> | Axis III | Type I diabetes. |

4

> Axis IV
> Axis V        Current GAF = 62.
>
> Mr. Rhodes should be considered capable of making his own financial decisions in his own best interest.
>
> In regards to employment, Mr. Rhodes would be able to work an 8 hour day and 40 hour week. Of particular concern is his neglect of his diabetic condition which resulted in his terminating his three month employment with a Wal-Mart franchise. If the claimant would be more diligent in regards to checking his blood glucose level, would manage his diabetes more successfully. He would likely be a consistent and reliable employee. From a psychological standpoint, there is nothing preventing this individual from being actively employed. He could perform simple and repetitive tasks without difficulty. He would be able to work with the public, peers, and supervisors appropriately and would not require specialized supervision.

(TR 465-66).

Plaintiff's diabetes presents a somewhat closer question. The Administrative Law Judge ultimately determined that the manifestations of Mr. Rhodes' diabetes are not so severe as to prevent regular work activity. The Law Judge relied on the medical record in concluding that there is no evidence of any end organ damage. The Law Judge declined to fully credit certain portions of plaintiff's testimony, in which plaintiff reported that he is unable to work on a sustained basis because of diabetic symptoms, including fatigue, dizziness, and sleepiness. In making this credibility determination, the Law Judge relied on a number of factors, including plaintiff's failure to comply with treatment recommendations, as well as his social and recreational activities. The Law Judge commented as follows:

> The records also show the claimant has type I diabetes; however, there is no evidence of any end organ damage to date and the claimant is often noncompliant with his diet and medications. The records show the claimant fails to keep blood sugar logs as directed and he continued to drink alcohol until August of 2011 by his testimony. The claimant testified that he lost his job at Cheddars restaurant because of problems related to diabetes; however, the claimant's problems secondary to diabetes will diminish with compliance with medications and diet.

5

> The records show the claimant is treated for anxiety and/or depression but he has not required psychiatric residential or inpatient care. In addition, the claimant participates in a wide range of activities of daily living as detailed above, has a girlfriend as well as other friends and plays team sports. Finally, records of Hall Community Services indicate the claimant is not always truthful.

(TR 19-20).

The court believes that there is evidence to support the Law Judge's resolution of the issues concerning plaintiff's diabetes and his credibility. Having reviewed the medical record, the court agrees that there is no evidence of end organ damage associated with plaintiff's type I diabetes. Furthermore, while plaintiff's treatment history reflects many peaks and valleys in his diabetic maintenance, the fact that plaintiff's diabetes has been stabilized for periods of time supports the Law Judge's determination that the condition is subject to reasonable control. While the court agrees that the Law Judge's assessment of plaintiff's credibility is somewhat abbreviated, the court believes that there is evidence to support the notion that Mr. Rhodes engages in a wide range of physical activities, despite his diabetes, and that he sometimes fails to follow his doctor's recommendations as to proper diabetic maintenance. In short, the court finds substantial evidence to support the Law Judge's resolution of the factual conflicts in this case. It follows that the final decision of the Commissioner must be affirmed.

On appeal to this court, plaintiff takes issue with the Law Judge's assessment of the credibility issues. Plaintiff first argues that, in finding that he has failed to follow prescribed treatment for his diabetes, the Law Judge did not adhere to the protocol established under Social Security Ruling 82-59 (PPS 78). The court agrees that the Law Judge did not undertake the detailed evaluation required under Social Security Ruling 82-59. However, this ruling applies to claims

adjudications under 20 C.F.R. § 416.930, which provides that claimants with disabling impairments may be denied benefits if they fail to follow prescribed treatment, unless there is a justifiable cause for the failure to do so. The Administrative Law Judge did not deny Mr. Rhodes' claim for continuing benefits based on the provisions of 20 C.F.R. § 416.930. Instead, the Law Judge engaged in the sequential disability analysis and ultimately found that plaintiff does not experience totally disabling impairments. Thus, the court concludes that the Law Judge's failure to engage in the analysis required under Social Security Ruling 82-59 is of no consequence.

Plaintiff's second argument regarding the Law Judge's credibility assessment is more compelling. Citing Social Security Ruling 96-7p, which deals with the evaluation of symptoms and the assessment of credibility, Mr. Rhodes maintains that the Law Judge missed the point in assigning failure to follow prescribed treatment as a reason for discrediting plaintiff's testimony. Plaintiff's argument is that, because of his intellectual deficiencies, he lacks the concentration, understanding, and memory necessary to follow through with all of his doctors' recommendations for treatment. The court agrees that the Administrative Law Judge did not consider this issue and, to that extent, the court believes that the record does not support the Law Judge's finding of failure to follow prescribed treatment as a reason for discrediting Mr. Rhodes' testimony. However, as noted above, the Law Judge cited a variety of other, unrelated reasons for concluding that Mr. Rhodes' testimony is not fully credible.

At the hearing, Mr. Rhodes testified to the effect that he is unable to engage in sustained work activity because of various symptoms of his diabetes. (TR 43-45). Nevertheless, as noted by the Law Judge, the record indicates that plaintiff goes to church (TR 270), plays team sports (TR 270, 584), has a girlfriend (TR 740), rides a bicycle (TR 623, 712), runs and exercises (TR 584),

7

lives independently and does laundry (TR 270), and uses a computer (TR 272). Stated succinctly, while the evidence on the issues of plaintiff's level of activity and medical compliance is in conflict, the court believes that the record supports the Law Judge's finding that plaintiff's testimony regarding his work-related capacity is not fully credible. Indeed, the court believes that the Law Judge gave Mr. Rhodes the benefit of the doubt in finding a residual functional capacity for only a limited range of sedentary work activity. Thus, regardless of whether Mr. Rhodes follows all of his doctors' treatment orders, plaintiff's actual level of activity belies his testimony as to his level of incapacity.

In summary, the court finds substantial evidence in support of the Law Judge's resolution of the medical issues in this case. While the court does not believe that all of the Law Judge's credibility findings are supported by substantial evidence, the court concludes that there is evidence upon which the Law Judge might reasonably find that plaintiff's testimony regarding his capacity for work is not fully credible. Finally, the court believes that the Law Judge reasonably relied on the testimony of a vocational expert in concluding that Mr. Rhodes is capable of performing several specific sedentary work roles existing in significant number in the national economy. Given the finding of substantial evidence in support of the Law Judge's resolution of all of the critical conflicts in the record, it follows that the final decision of the Commissioner must be affirmed.

In affirming the Commissioner's final decision, the court does not suggest that Mr. Rhodes is free of all work-related difficulties. He experiences definite intellectual limitations. Moreover, plaintiff's diabetes can be expected to result in a variety of worrisome and troubling symptoms. However, it must again be noted that the most recent psychological evaluation resulted in a finding of residual functional capacity for regular work activity. Moreover, Mr. Rhodes' actual level of

functioning also supports the notion that he is capable of some forms of work. It must be recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Once again, it appears to the court that the Administrative Law Judge gave fair consideration to the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claim for benefits. Indeed, as previously noted, the court believes that the Law Judge gave Mr. Rhodes the benefit of the doubt in this regard. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER this 12th day of September, 2013.

/s/ Glen Conrad

Chief United States District Judge